UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE


Robert Thomas

    v.                                      Civil No. 13-cv-259-LM
                                                   Opinion No. 2014 DNH 231

Warden, Federal Correctional
Institution, Berlin, New Hampshire


**O R D E R**

Before the court is respondent's motion to dismiss (doc. no. 21) Robert Thomas's petition for a writ of habeas corpus brought pursuant to 28 U.S.C. § 2241. Thomas objects (doc. nos. 32 and 38), and respondent has filed a response (doc. no. 39) to that objection.

On September 24, 2014, the court held a hearing on the motion to dismiss, at which counsel for each side appeared. Thomas appeared, via audio link, from the prison. Subsequent to the hearing, Thomas filed a motion to "Stay the Proceedings and Reconsider Petition and to Appoint Substitute Counsel" (doc. no. 42), which is also pending before the court.

**Background and Prior Proceedings**[1]

Petitioner Robert Thomas was arrested in Illinois on a state armed robbery charge on October 1, 2000, and was detained

---

[1] The proceedings described herein do not constitute an exhaustive review of Thomas's post-conviction litigation. The proceedings described and discussed in this order are those relevant to the issues presently before the court.

pretrial at the Cook County Jail in Chicago, Illinois.  On March 21, 2001, Thomas was "borrowed" by the United States Marshals Service ("USMS") pursuant to a writ of habeas corpus ad prosequendum and detained at the Metropolitan Correctional Center, a federal facility in Chicago, to answer federal drug charges, unrelated to the state charges, in the United States District Court for the Northern District of Illinois.  See United States v. Thomas, No. 01-cr-03 (N.D. Ill.) ("federal criminal case").  On September 14, 2001, Thomas was sentenced on his federal charges to 360 months imprisonment.  See id., ECF No. 243.

On October 21, 2001, Thomas was sentenced in the state court to a twenty-year prison term on the armed robbery charge.  The state sentencing court ordered that, per an agreement between Thomas and the state prosecutor, the sentence was to run concurrently with the already-imposed federal sentence, and would be served in the federal prison where Thomas would be serving his federal sentence.  Thomas believed at the time that the State of Illinois had waived and relinquished its primary jurisdiction to the federal authorities.

On December 5, 2001, the USMS assumed custody of Thomas, without having first obtained a writ of habeas corpus ad prosequendum, and placed Thomas at the Federal Correctional Institution in Pollock, Louisiana ("FCI Pollock").  Shortly

thereafter, the Illinois Department of Corrections ("IDOC") lodged a detainer with the federal prison, so that if Thomas were released prior to the expiration of his state sentence, he would be returned to the IDOC to complete his state sentence. On April 11, 2002, however, the Bureau of Prisons ("BOP") determined that Thomas had been erroneously taken into federal custody, and, without requiring the IDOC to obtain a writ of habeas corpus ad prosequendum, returned Thomas to the IDOC to serve his state sentence.

Thomas remained in IDOC custody until November 19, 2008, when he was paroled from his state sentence, and returned to federal custody to serve the remainder of his federal sentence. After his November 2008 return to federal custody, Thomas learned that he was not going to be credited for any of the time he had spent in custody, since his October 1, 2000, arrest, until he was returned to federal custody on November 19, 2008, as all of that time had been credited toward his state sentence. Thomas requested that the BOP recalculate his sentence to give him credit against his federal sentence for the time he spent in the IDOC, as the Illinois state sentencing court had intended. The BOP denied his request.

On November 13, 2009, Thomas was incarcerated at the Federal Correctional Institution in Gilmer, West Virginia ("FCI Gilmer"). On that date, Thomas filed a petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2241, in the United States District Court for the Northern District of West Virginia, challenging the BOP's calculation of his sentence. See Pet., Thomas v. Deboo, No. 2:09cv134 (N.D. W. Va. Nov. 13, 2009), ECF No. 1. Specifically, Thomas asserted claims alleging that the State of Illinois had waived and relinquished primary jurisdiction over him at the time of his state court sentencing, and that, therefore, his designation to a federal facility in 2001 was proper. He argued that his return to the IDOC in 2002 was erroneous and caused him not to receive credit against his federal sentence for the time he had served prior to his November 2008 return to federal custody. He also asserted that his return to the IDOC caused him to serve his federal sentence in installments. See id.

On April 8, 2010, the West Virginia court granted the United States' motion to dismiss or, in the alternative, for summary judgment, and denied Thomas's § 2241 petition. See Thomas v. Deboo, No. 2:09cv134, 2010 WL 1440693, at *7 (N.D. W. Va. Apr. 8, 2010), adopting report and recommendation, 2010 WL 1440465 (N.D. W. Va. Mar. 8, 2010), aff'd, 403 F. App'x 843 (4th Cir. Nov. 30, 2010) (per curiam). In its order, the West

4

Virginia federal court expressly found that whatever the intention of the parties and court at the time of Thomas's state court sentencing, the executive of the State of Illinois did not expressly or affirmatively waive primary jurisdiction over Thomas at any time until it paroled Thomas from his state sentence in November 2008.  See Thomas, 2010 WL 1440465, at *3-5.  The court, therefore, denied Thomas relief.  See id. at *7.

 On April 26, 2011, Thomas filed a "Motion for Retroactive Designation" in his federal criminal case.  See Mot. for Retroactive Designation, United States v. Thomas, No. 01-cr-03 (N.D. Ill. Apr. 26, 2011), ECF No. 428.  On July 15, 2011, that court denied his motion without prejudice to his renewing the claim in a § 2241 petition brought in the federal court in the district of Thomas's incarceration at the time of such filing.  Id., ECF No. 437.[2]

Thomas again sought relief, as he had in 2008, through the BOP's administrative grievance system, by requesting, again, that the BOP retroactively designate the IDOC as the place at which he was to serve his federal sentence.  In its response to Thomas's request, the BOP found that Illinois had not waived its primary jurisdiction over Thomas, and that the USMS's assumption

---

[2] Thomas did not inform the Illinois federal court of his prior § 2241 petition in West Virginia and it is unclear from the record whether the court was aware of that petition.

5

of custody over Thomas on December 5, 2001, was erroneous, and that the error was corrected by returning Thomas to the IDOC in 2002 to serve his state sentence.  Further, the BOP determined that Thomas had received credit against his state sentence for all of the time he had served in state custody, from his October 1, 2000, arrest until his November 19, 2008, parole to federal custody, and that Thomas therefore could not be given credit against his federal sentence for that time, pursuant to 18 U.S.C. § 3585(b).

    Thomas then filed this action asserting that his due process rights had been violated by the BOP, asserting the same claims raised in his § 2241 petition in federal court in West Virginia, in his administrative grievances to the BOP, and in his 2011 motion for retroactive designation filed in the federal criminal case in Illinois.  Thomas further contends in this action that this court should address his petition on the merits based on documentary evidence, attached to the instant petition, of the State of Illinois's intention to relinquish primary jurisdiction over Thomas at the time his state sentence was imposed, which was not available to the West Virginia federal court at the time it made its decision.

**Discussion**

I. <u>Motion to Dismiss</u>

In his motion to dismiss (doc. no. 21) and the memorandum of law (doc. no. 22) filed in support thereof, respondent argues that, under the "abuse of the writ" doctrine, Thomas is barred from relitigating his claims here, as each of those claims was, or could have been, litigated in his § 2241 action in West Virginia. Thomas objects.

Under the "abuse of the writ" doctrine, a district court has discretion to dismiss a § 2241 habeas petition that is premised on mere "repetition of a previously asserted claim." Esposito v. Ashcroft, 392 F.3d 549, 550 (2d Cir. 2004) (per curiam). "[A] petitioner can abuse the writ by raising a claim in a subsequent petition that he could have raised in his first." McCleskey v. Zant, 499 U.S. 467, 489 (1991). The court can, however, consider the merits of a claim raised in a previous habeas petition if the failure to raise the claim at the time of the previous habeas proceeding was caused by the unavailability of the legal or factual basis for the claim, where petitioner can show "'actual prejudice' resulting from the errors of which he complains." McCleskey, 499 U.S. at 494 (applying "cause and prejudice" analysis used in procedural default cases to "abuse of the writ" inquiries); see also Agoro

7

v. United States, No. 11 Civ. 1818(SAS), 2011 WL 1330771, at *2 (S.D.N.Y. Apr. 4, 2011) ("A successive petition is an abuse of the writ unless the petitioner is able to show cause for failing to raise the earlier claim (or seeking to raise the same claim twice) and any resulting prejudice.").

The burden to plead abuse of the writ rests with the government. See McCleskey, 499 U.S. at 494. The burden to disprove abuse then falls to the petitioner. See id. To disprove abuse, the petitioner must either demonstrate cause and prejudice for the failure to previously raise a claim, or must show that a "fundamental miscarriage of justice would result from a failure to entertain the claim." Id. at 495.

Thomas presents two "repeat" claims in this petition, both of which he asserted in his § 2241 petition before the West Virginia federal court: (1) that the State of Illinois relinquished primary jurisdiction to the federal correctional authorities following his sentencing in Illinois in 2001; and (2) that his return to state custody in 2002 was erroneous and resulted in his serving his federal sentence in installments. He asserts that both claims survive the respondent's motion to dismiss. In addition, Thomas asserts that this court should consider his petition, even if it involves "repeat" claims, because a fundamental miscarriage of justice would result were the court to dismiss his petition.

### A. Primary Jurisdiction Claim

Thomas does not dispute that he previously raised (or could have raised) in his prior § 2241 petition the primary jurisdiction claims he asserts in the instant § 2241 action. Rather, Thomas argues that the instant petition survives the abuse of the writ doctrine because of the unavailability to him at that time of two documents that, he asserts, conclusively establish the intention of the State of Illinois to relinquish primary jurisdiction over him to the federal authorities in 2001.

The doctrine of primary jurisdiction is central to the determination of priority of custody and service of sentence between state and federal sovereigns. A defendant sentenced by both a state and federal sovereign will first serve the sentence of the sovereign with primary jurisdiction. See United States v. Warren, 610 F.2d 680, 684 (9th Cir. 1980). And, primary jurisdiction resides with the sovereign that first arrests a defendant. See Stephens v. Sabol, 539 F. Supp. 2d 489, 493 (D. Mass. 2008). The arresting sovereign "retains that jurisdiction until it takes a specific act to relinquish it, such as release on bail, parole, or the dismissal of pending charges." Id.

In Thomas's prior § 2241 action, the question before the West Virginia federal court was whether the state of Illinois

"relinquished primary jurisdiction of him to federal authorities on December 5, 2001." Thomas, 2010 WL 1440465, at *3. Answering that question in the negative, the West Virginia federal court noted the following undisputed facts relative to Thomas's primary jurisdiction argument:

- The State of Illinois obtained primary custody of Thomas upon Thomas's October 1, 2000, arrest.

- On December 5, 2001, the USMS took custody of Thomas and requested designation to a BOP facility.

- Thomas was subsequently placed at FCI Pollock to serve his federal sentence.

- After Thomas's arrival at FCI Pollack, the BOP determined that Illinois had not actually relinquished primary jurisdiction over Thomas, and therefore Thomas's designation to FCI Pollock was a mistake.

- On April 11, 2002, the error was corrected when Thomas was returned to the IDOC, where he stayed until he was paroled to his federal sentence on November 19, 2008.

See Thomas, 2010 WL 1440465, at *3-4. In addition, the West Virginia federal court made the following specific findings concerning primary jurisdiction:

> Despite what the petitioner may believe, it is clear from the undisputed facts that the state did not expressly relinquish[] primary jurisdiction of the petition[er] until November 19, 2008, when he was

10

> paroled from his state sentence. Prior to that date, the executive of the State of Illinois took no affirmative act to waive or relinquish primary jurisdiction. Specifically, prior to November 19, 2008, there had been no release to parole, grant of bail, dismissal of the charges or any written waiver of primary jurisdiction. Nor did the state court effectively relinquish custody of the petitioner so that the BOP had an obligation to take him into federal custody and keep him there.

Id. at *4.

Here, the government has met its initial burden to show that Thomas's instant § 2241 petition is comprised of claims that were raised or could have been raised in the West Virginia § 2241 petition. The question is whether Thomas can establish cause and prejudice. Thomas points to two documents he has attached to his petition in an attempt to establish a "factual unavailability" argument. The court considers each document.

### 1. D. L. Heady Memo (Doc. No. 1-1, p. 7)

The first document is a memorandum to Thomas from D. L. Heady, a Unit Manager at FCI Gilmer. In the memo, Heady states that on August 28, 2012, he had a conversation with Ms. Becky Williams, an IDOC records supervisor, and that Ms. Williams stated that the USMS erroneously returned Thomas to the IDOC in April 2002, and that Thomas should have remained in federal custody at that time. Thomas argues that the memo provides evidence that corrections officials in Illinois understood that

11

the State had relinquished primary jurisdiction over him to federal authorities.

Nothing in the memo, or elsewhere in the record, however, demonstrates that the legal and factual basis of any claim asserted here was unavailable to Thomas at the time he litigated his § 2241 claims in West Virginia. Indeed, the West Virginia federal court explicitly rejected Thomas's claims arising out of what he asserted were the subjective beliefs of state officials, when that court found that, despite the intentions or beliefs of those involved, no Illinois official with the authority to waive primary jurisdiction over Thomas had actually effected such a waiver. Nothing in the Heady memorandum suggests that Ms. Williams had such authority, or that her opinion rested on a decision of any official with such authority. Moreover, the document itself contains no reference to any specific facts supporting Thomas's theory of the relinquishment of primary jurisdiction that were not known to Thomas, or the West Virginia federal court, at the time that court denied Thomas's § 2241 petition. This court cannot find that if the Heady memo had been available to the West Virginia federal court, the result of the proceedings before that court would likely have been different. Thus, Thomas has failed to meet his burden to demonstrate cause and prejudice relating to the Heady memo and its contents.

2. Harrell Watts Response (Doc. No. 1-1, pp. 19-20)

The second document presented by Thomas in support of his petition in this court is the April 30, 2013, response from Harrell Watts, a BOP official, denying Thomas's March 13, 2013, appeal of his request that the BOP either retroactively designate the IDOC as the location where Thomas would serve his federal sentence, or release him due to the interruption of his federal sentence created by his placement at the IDOC. That April 30, 2013, document references a prior appeal, which was decided on June 18, 2009. In addition to the fact that none of the statements in Watts's response support Thomas's position here, the information contained in that document was apparently in Thomas's possession in June 2009, five months prior to his November 2009 filing of his § 2241 petition in West Virginia. Accordingly, Thomas can demonstrate neither cause for failing to present the information in the document to the federal court in West Virginia, nor prejudice resulting from that court's lack of consideration of the document.

In sum, neither document provides Thomas any refuge from the abuse of the writ doctrine. There has never been any dispute that the Illinois state court intended Thomas's state court sentence to run concurrently with Thomas's federal sentence, and that the Illinois corrections officials attempted to effectuate that by releasing Thomas to federal custody

13

following the state sentencing hearing. These facts have been available to Thomas all along. Nothing in either of the two documents sheds additional (or previously unavailable) light on those undisputed facts. The only question before this court is whether the Illinois court order and the act of releasing Thomas to federal custody pursuant to that order caused Illinois to relinquish its primary jurisdiction over Thomas. That question was answered by the West Virginia federal court and the Fourth Circuit in the negative. Those rulings preclude the matter from being relitigated here.

    B.    Installment Sentence Claim

The second "repeat" claim Thomas asserts here is that his return to the IDOC in 2002 was erroneous, resulting in his improperly being made to serve his federal sentence in installments. Although the West Virginia federal court found that Thomas's federal sentence had been properly calculated by the BOP, it does not appear that the instant "installment" claim was expressly addressed by that court. The West Virginia federal court's finding, however, that Thomas's federal sentence was properly calculated as commencing on November 19, 2008, rendered discussion of the installment claim unnecessary, as it was undisputed that Thomas has been serving his federal sentence continuously since that date. And, Thomas asserts no basis upon

which this court can find that manifest injustice would result if this court does not make explicit findings and rulings concerning his installment claim. Accordingly, the court finds that Thomas has not met his burden of showing that the installment sentence claim survives the abuse of the writ doctrine.

    C.    <u>Fundamental Miscarriage of Justice</u>

Although undeveloped, Thomas's final argument is that a fundamental miscarriage of justice results from the BOP's decision to deny him the eight years of confinement credit to which he was entitled pursuant to the order of the Illinois state court at his state sentencing in October 2001. At first glance, there is some appeal to Thomas's argument that the BOP committed a fundamental miscarriage of justice if, indeed, it forced him to be incarcerated for eight years more than his sentence required.[3] For the "fundamental miscarriage of justice" exception to apply, however, a petitioner must show "'a

---

[3] Significant federalism issues are raised in a case such as this, where the BOP's calculation of an inmate's release date appears to contravene a sentencing order of a state court. After expressly considering this issue, however, the West Virginia federal court upheld the BOP's decision not to credit Thomas's time spent in state custody. <u>See</u> Thomas, 2010 WL 1440465, at *5-6.

constitutional violation [that] has probably resulted in the conviction of someone who is actually innocent.'" Schlup v. Delo, 513 U.S. 298, 327 (1995) (quoting Murray v. Carrier, 477 U.S. 478, 496 (1986)). The purpose of this exception is to provide "an additional safeguard against compelling an innocent man to suffer an unconstitutional loss of liberty." See McCleskey, 449 U.S. at 495 (quoting Stone v. Powell, 428 U.S. 465, 492-93, n.31). Thomas is not claiming that he is innocent; he claims only that the BOP has erroneously calculated the duration of his sentence. Thus, to the extent he is relying on the miscarriage-of-justice exception, his reliance is misguided. The doctrine does not apply here.

    D.    <u>Conclusion</u>

Having carefully considered the entire record in this case, the court finds that Thomas has failed to meet his burden to disprove the applicability of the abuse of the writ doctrine. Accordingly, this § 2241 petition is barred by the abuse of the writ doctrine. The court does not, therefore, address the merits of the claims asserted therein.

II.    <u>Motion to Stay the Proceedings, Reconsider Petition, and Appoint Substitute Counsel (Doc. No. 42)</u>

Thomas has filed a motion (doc. no. 42), asking the court to consider the facts and documents before it, as well as to

consider the law presented by both Thomas and his attorney. In his motion, Thomas also highlights certain points of law that have been previously presented to the court orally or in the written record of this case. The court assures Thomas that it has fully considered all of the arguments of law and fact in the record. To the extent Thomas is seeking reconsideration of any decision this court has previously issued, the motion is denied.

Thomas also seeks a stay in this action and the appointment of substitute counsel on the basis of a breakdown in the relationship between himself and Attorney Vogelman. Nothing in the motion, however, suggests that Attorney Vogelman failed to do anything in this case that would have worked to Thomas's benefit. Nor does the motion indicate that there is any information that Thomas was unable to bring to the court's attention. Accordingly, there is no basis to stay this matter, or appoint substitute counsel, and those requests are denied.

### Conclusion

For the foregoing reasons, the court issues the following order:

1. Petitioner's "Motion to Stay the Proceedings and Reconsider Petition, and to Appoint Substitute Counsel" (doc. no. 42) is DENIED.

2. Respondent's Motion to Dismiss (doc. no. 21) is GRANTED, and Thomas's § 2241 Petition (doc. no. 1) is DENIED. The clerk is directed to enter judgment and close the case.

SO ORDERED.

_____
Landya McCafferty
United States District Judge

February 5, 2015

cc: Larry Vogelman, Esq.
    Seth R. Aframe, Esq.